B"H



INSTITUTE

Joseph and Sterna Gutnick
NATIONAL HEADQUARTERS

**Chairman / Founder**
Rabbi Sholom D. Lipskar

**President**
Lloyd S. Rubin

**Vice President**
Ryan Shapiro

**Executive Director**
Rabbi Aaron Lipskar

**Secretary**
Joy Fishman

**Treasurer**
Boruch Duchman

**Board of Directors**
Robert Danial
Boruch Duchman
Joy Fishman
Stephen Fiske
Russel Galbut
Reuven Herssein
Daniel Holtz
Alberto Kamhazi
Sonny Kahn
Rabbi Aaron Lipskar
Rabbi Sholom Lipskar
Morris Mandel
Lloyd Rubin
David Schottenstein
Ryan Shapiro
Eric Stein
Sylvia Urlich

**Director of Operations**
Moshe N. Barouk

**Director of Advocacy**
Rabbi Zvi Boyarsky

**Director of Family Programs**
Rabbi Shua Brook

**Director of Military Programs**
Rabbi Sanford L. Dresin

**Director of Outreach Programs**
Rabbi Menachem M. Katz

**Chief Financial Officer**
Yosie Lipskar

א    א    א

**Spark of Light Prison Program**

**Operation: Enduring Traditions Military Programs**

**F.E.E.L.S Family Program**

November 26, 2017

The Honorable Kenneth M. Karas
United States District Judge
Federal Building and United States Courthouse
300 Quarropas St., Courtroom 521
White Plains, NY 10601-4150

Re:    <u>SENTENCING: *United States v. Yehuda Rubin*</u>
       Docket # 0208 7:14CR00741-002(KMK)

Dear Honorable Judge Karas,

On behalf of *The Aleph Institute ("Aleph")*, it is a privilege to be given the opportunity to address this Court in the important sentencing process of this defendant, Mr. Yehuda Rubin. I write today to respectfully request that this Court consider certain mitigating circumstances surrounding this particular defendant. We will explain why *Aleph* has become involved and how we may provide assistance to the Court. [1]

Since 1981, Aleph has offered spiritual and emotional support, as well as rehabilitation and family counseling, to thousands of individuals and their families nationwide who are enmeshed in the criminal justice system. In select cases Aleph also provides limited advocacy at sentencings, asking that an alternative sentence be imposed. We are very cautious before presenting an alternative sentencing submission to a court for consideration, recognizing that, every time we do so, we place the credibility of our entire 36-year-old, national organization directly on the line.

## I. The Aleph Institute

Aleph is a not-for-profit, national educational, humanitarian and advocacy organization founded in 1981 at the direction of, the *Lubavitcher Rebbe*, Rabbi Menachem M. Schneerson, of blessed memory.

---

[1] Our overarching concerns, and non-negotiable pre-requisites, for our involvement in any case, are: No violence, complete and unquestionable acceptance of responsibility (attested to by, amongst other factors, genuine remorse), and our conviction that the individual not pose a future threat to society.



Aleph's mandate is, perhaps, best described in the words of Senior (and former Chief) United States District Judge for the Eastern District of New York, Jack B. Weinstein, in whose chambers Aleph was founded:

> Rabbi Sholom Lipskar, the guiding force of the Aleph Institute, and his associates understand and force us to face the fact that each person deserves to be treated with respect as an individual personality and not as...a faceless number...The Aleph Institute is doing extraordinary fine work. Its assistance to defendants and their families provide standards of compassion and aid worthy of emulation...Aleph helps in three ways.  First, it explains to judges and the judicial system when and how alternatives to prison which protect the public are possible.  Second, it helps those in prison develop their spiritual lives and maintain contact with their families and the world beyond their bars and barbed wire.  Third, it assists those outside, particularly the children of prisoners, to retain their ties with prisoners. As a result of its good work, Aleph is widely known and respected by penal and judicial authorities.

Jack B. Weinstein, *Prison Need Not be Mandatory*, *There are Options Under the New U.S. Sentencing Guidelines*, 28 No. 1 Judge J. 16 (Jud. Admin. Div., Amer Bar Ass'n 1989).  Aleph's primary goal is to serve a pressing need of our society by addressing significant issues relating to our criminal justice system.

Over the past 36 years, Aleph's has conducted programs in cooperation with professionals in the criminal justice system at no cost to government. Aleph deeply appreciates the support we have received from judges and prosecutors nationwide. [2]  For example, the Hon. Joy Flowers Conti, Chief District Judge of the United States District Court for the Western District of Pennsylvania, has noted, "You at Aleph are doing extraordinary things on behalf of the judges in my court. We appreciate the work that you do." *Address to the Pittsburgh Chaplains Conference* (November 19, 2014).

Aleph has created and administered a host of recognized programs to counsel and assist offenders with rehabilitation, counsel and support their families through the process and ameliorate or reduce necessary periods of incarceration.  All this while providing for public safety, monitoring alternative sentencing protocols, and implementing educational programs for offenders and their families.  In all of our work, we strive to inculcate universal truths of moral and ethical behavior.  As a publicly-funded 501(c)(3) organization, *Aleph* provides all services on a *pro bono* basis.

## II. Sentencing Philosophy

Sentencing proposals prepared by Aleph are designed to mete out appropriate, substantive punishment with the greatest benefit and lowest cost to society, while redirecting and enhancing an offender's value structure through social, therapeutic and religious counseling and education.

In March 2016, Aleph organized and hosted the first-ever *Alternative Sentencing Key Stakeholders Summit* (the "*ASKS Summit")*, held in Georgetown Law School in Washington, D.C., and attended by over 200 criminal justice professionals, including federal and state judges and prosecutors, attorneys, prison directors, psychologists, social workers and community leaders. The Hon. John Gleeson, former United States District Court Judge for the Eastern District of New York, spoke at the summit about alternative sentencing:

---

[2] At the Alternative Sentencing Summit hosted by Aleph in Bethesda, MD, the Hon. Charles Renfrew, who served as both United States District Court Judge and United States Deputy Attorney General, commented:
> I think we're all in agreement that this has been an extraordinary summit. And I would just like to go a little back in history. Thirty-five years ago, in Miami, Florida a young rabbi started [Aleph] an educational institution believing as he did that education was a fundamental right and goal of all people. He also had an interest in reforms being made in the criminal justice system to deal with defendants more humanely to be aware of the impact on families. And he started an institution and an organization to deal with these problems. Today we're the beneficiaries of that vision and that work.

B"H



Joseph and Sterna Gutnick
NATIONAL HEADQUARTERS

We need to prove going forward what I know in my bones is the truth, which is, these [alternative sentences] work, just as they worked in the states. And they put a human face on a criminal justice system that, for the last 25-30 years, is so desperately in in need of a little humanity. This is the right thing to do.

Two thirds of federal judges in 1996 responded to this survey by saying there ought to be alternative to incarceration programs. DOJ supports them.  FJC supports them..., The ABA. Right on Crime… across the political spectrum.

Also addressing the Summit, was Justice of the Georgia Court of Appeals, Michael Boggs, who stated that, "a large percentage of our prison population is there because of an addiction issue or a mental health issue. Eighty percent of crime is drug related."

Summit co-chair Bernice Donald, United States Circuit Judge for the Sixth Circuit, commented on how, "today judges and lawyers, prosecutors and law enforcement communities…are engaged in trying to make certain that our system is fair. It takes a collaborative partnership and that's why I am so glad that all of us are here committed to making certain our justice system is the best that it can be. And I thank [Aleph] for being here. And I thank you for your continued great work."

Many federal and state judges have viewed our sentencing recommendations with favor, including the Hon. Patricia Seitz and Alan S. Gold, United States District Judges for the Southern District of Florida, and United States District Court Judge David Trager in the Eastern District of New York.

### III. Yehuda Rubin's Unique Circumstances

Mr. Rubin's attorneys have done a very thorough job of laying out Mr. Rubin's unique circumstances. I do not wish to repeat all of that information here, but rather offer the following brief summary for context.

Mr. Rubin led a very insular life as part of the Satmar Chasidic sect. He met and married his wife at age 19.

Mr. Rubin began a career as a mortgage broker during the time of the pre-2008 abuses which led to the massive losses in the financial sector in general and the real estate market in particular. While in his early 20's, Mr. Rubin made fraudulent misrepresentations to obtain real estate loans.

Since his arrest Mr. Rubin has been part of an honest business which provides testing for the construction industry. He now has four young children who adore him. More than twenty letters attest that Mr. Rubin is a loving father and husband who understands that what he did was wrong, regrets his misdeeds, and is committed to leading an honest, law-abiding life.

In the event of incarceration, not only will Mr. Rubin's family suffer inordinately due to the dependence of Mr. Rubin's immediate family but also his 29 employees would likely lose their jobs as his company would almost certainly have to close.



## IV. Sentencing Considerations

Certain cases afford us the unique benefits to have a strong impact beyond just deterrence and protection of society but can directly improve general attitudes and misconceptions that may unfortunately breed unacceptable and even illegal behaviors. All of this is possible in the sentencing of Mr. Rubin.

Your honor, during the pendency of this case, Mr. Rubin reached out to Aleph to meet with us. He had heard about us and wanted advice about the criminal justice system. I met with Mr. Rubin and spoke to him on several occasions. I got to know him on a personal level.

Mr. Rubin has acknowledged to me his wrongdoing. He did not try to minimize it or justify what he did wrong. He acknowledged that at the time he committed his criminal conduct he did not appreciate the seriousness of his conduct and he now understands that what he did was not acceptable behavior. He told me how terrible he feels about his conduct.  He told me, "I was reckless and I hurt my family."

Mr. Rubin and I discussed the concrete steps he has taken in his continuing efforts to correct his past errors. In describing his company, Big Apple Testing Inc., which helps owners and developers who purchase properties and buildings, Mr. Rubin told me, "The company ensures that everything is up to NYC code and that all safety requirements are met." Mr. Rubin told me that it has been in operation two and a half years. He started with one employee and now has 29 from all walks of life: African American, Hispanic, Jewish, Latino, Guyanese.

Sadly, if Mr. Rubin is incarcerated, Big Apple Testing would possibly close down. Most of the employees are living paycheck to paycheck. They would suffer immensely if Yehuda were to be away for any length of time.

I am confident in looking at all of the circumstances that:

- Mr. Rubin knows and accepts U.S. law that determines right and wrong and establishes what is legal or criminal;
- He has acknowledged and accepted responsibility for perpetrating the criminal acts. As the PSR states, Mr. Rubin "has clearly demonstrated acceptance of responsibility for the offense" (PSR ¶¶ 63-64). Mr. Rubin fully admitted his wrongdoing. (PSR ¶54).
- He has exhibited a deep sense of remorse that includes shame, public acceptance of guilt, and personal penitence.
- He is committed to never perpetrate any such malfeasance again;

Mr. Rubin recognizes that his criminal conduct was serious and will require punishment. He asked that we submit a proposal to the Court for an alternative sentence. We are hopeful the Court will consider several, or all, of the components below, as an adequate, but not greater than necessary punishment (18 U.S.C. § 3553(a):

1) 3 years community service of 5 hours per week, working in a community program, preferably with the homeless. Aleph will help him find an appropriate program, in conjunction with probation.

2) 3 years of lecturing to high school students in his community about "how the law of the land is the law for all, without exception."  He will deliver his talk in 3 high schools per semester, in Monroe and in Brooklyn.

3) One year of halfway house in a community setting so he can continue to support his family and so that there can be opportunity for him to run his business and pay his forfeiture and restitution.

4) Maximum probationary period;

B"H



Joseph and Sterna Gutnick
NATIONAL HEADQUARTERS

We strongly believe the above-proposal is fully consistent with established sentencing goals of protection of society, deterrence, punishment, restitution and rehabilitation. This proposal would also allow for Mr. Rubin to pay back his debt to society in a very tangible way, placing most of the consequences squarely on Mr. Rubin's shoulders and minimizing the suffering his already broken-hearted spouse and children would have endured.

Aleph submits this proposal because we believe Mr. Rubin has already taken very significant steps to demonstrate his sincere remorse. His family situation, his young age at the time of the offense and his demonstrated rehabilitative efforts warrant consideration. We respectfully submit that our proposal of alternatives will give Mr. Rubin the best possible chance of continuing his successful rehabilitation. Importantly, it will also ensure that Mr. Rubin gives back to society instead of adding a further burden.[3]

To ensure Mr. Rubin's full compliance with all aspects of this proposal, Aleph would use its unique and vast network of religious and lay leaders to implement any reporting and compliance directives by this Court and would, of course, work with the United States Probation Office, in any way they see fit, to implement and monitor this multi-faceted sentencing program. We would submit regular reports to the Court on all aspects of this proposal.

### V. Conclusion

Your Honor, the mitigating circumstances of Mr. Rubin's case are unusually compelling and, hence, we are confident that this Court could consider fashioning a sentence that would benefit society in a major way while ensuring that Mr. Rubin *gives back* to society. We are aware that this Court has wide-ranging discretion to consider any or all of Mr. Rubin's unique circumstances as a basis for sentencing, and we respectfully submit that our alternative sentencing recommendation will adequately protect society while addressing the specific needs of Mr. Rubin's rehabilitation.  It would also effectuate the purposes of, and be consistent with, sentencing goals enumerated in 18 U.S.C. § 3553(a) and would offer all of the benefits underlying a sound corrections policy, while avoiding additional and unnecessary negative or harmful consequences.

Thank you, Your Honor, for taking the time to review and consider our alternative punishment submission. I hope and pray that this submission will receive the consideration that will produce positive results for society and for Mr. Rubin.

---

[3] According to the Federal Register, the cost to cover the average cost of incarceration for Federal inmates in Fiscal Year 2014 was $30,619.85 ($83.89 per day).
https://www.federalregister.gov/documents/2015/03/09/2015-05437/annual-determination-of-average-cost-of-incarceration



With the utmost respect and admiration for Your Honor's wise, sagacious and compassionate decisions, I pray that G-d bless you with good health, peace of mind and the ability to continue your dedicated service to our nation for many years to come. I will be in your Honor's Court at the sentencing hearing to answer any questions and to be helpful in any way I can.

Respectfully yours,

Rabbi Aaron Lipskar
Executive Director
The Aleph Institute